JEFFREY E. FAUCETTE (No. 193066)
SKAGGS FAUCETTE LLP
One Embarcadero Center, Suite 500
San Francisco, California 94111
Telephone: (415) 315-1669
Facsimile:  (415) 433-5994
E-mail: jeff@skaggsfaucette.com

Attorneys for Defendants SOTHEBY'S and SOTHEBY'S, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN BROOKS,<br><br>    Plaintiff,<br><br>v.<br><br>SOTHEBY'S, SOTHEBY'S, INC., and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 3:13-cv-02183-RS<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS SOTHEBY'S AND SOTHEBY'S, INC.**<br><br>**(FRCP 12(b)(3))**<br><br>Date:      June 27, 2013<br>Time:      1:30 p.m.<br>Location:  Courtroom #3, 17th Floor<br>Judge:     Honorable Richard Seeborg |

## I. INTRODUCTION

This dispute arises out of Plaintiff Steven Brooks' purchase of a painting in 2004 at an auction in London, England, conducted by Sotheby's, a registered company in England and Wales ("Sotheby's London"). The parties agree (1) that the purchase was made pursuant to the Conditions of Business contained in Sotheby's London's auction catalogue, (2) that those Conditions of Business contain a forum selection clause vesting exclusive jurisdiction for this dispute in the Courts of England, and (3) that if the forum selection clause is enforceable then this case should be dismissed. The only points of disagreement are Brooks' arguments that the forum selection clause is unenforceable either because of California public policy or because Brooks claims he did not have sufficient notice of the clause.

These arguments fail. There is no evidence that Brooks' claims would be barred or that his remedies would be any different if the forum selection clause were enforced. Moreover, Brooks' argument about public policy is based on a logical fallacy because enforcement of the forum selection clause does not mean that a court in England would not look to the law of California to decide Brooks' claims pursuant to a conflict-of-laws analysis under English law. There is also no evidence that Brooks did not receive sufficient and reasonable notice of the forum selection clause. Before purchasing the painting at issue in 2004, Brooks had made more than 30 prior purchases from Sotheby's London's auctions—all pursuant to the same forum selection clause. The auction catalogue for the 2004 auction as well as all of the prior auctions contained the forum selection clause under the bold-faced heading **Law and Jurisdiction**. The invoice Brooks received made specific reference to these Conditions of Business. In this context, Brooks decided to spend *$96,000* on a single painting. Brooks had every incentive and ability to determine the conditions under which he made this purchase. Under these circumstances, it is entirely reasonable to enforce the forum selection clause contained in the Sotheby's Conditions of Business. Indeed, it would upend the settled expectations of thousands of bidders and sellers worldwide who participate in Sotheby's auctions to learn that the Conditions of Business do not actually govern these transactions.

Under Supreme Court and Ninth Circuit authorities as well as multiple decisions by the Courts of this District, the forum selection clause must be enforced, and this case must be dismissed.

## II.     STATEMENT OF FACTS

As noted, the parties agree on the legal standard here and that Brooks has the burden of demonstrating why the forum selection clause is unenforceable.  In support of his opposition to this motion, Brooks has submitted a declaration that states that he "did not notice" the forum selection clause and then states four paragraphs of irrelevant facts regarding the alleged merits of his claims.  Brooks has also submitted a Request for Judicial Notice and a declaration from his counsel introducing exhibits that appear designed to show that Defendants should be amenable to jurisdiction in this district.  These exhibits are irrelevant to the question of whether the forum selection clause is enforceable.[1]

Brooks has not disputed any of the evidence submitted by Defendants in support of this motion, and he has failed to submit any evidence in support of his arguments regarding contravention of California public policy.

## III.    ARGUMENT

Defendants' opening memorandum stated (1) that forum selection clauses provide grounds for dismissal under Federal Rule of Civil Procedure 12(b)(3), (2) that the court need not accept the pleadings as true and may consider facts outside the pleadings, and (3) that the burden is on Brooks to demonstrate that venue is proper in light of the forum selection clause.  In his opposition, Brooks concedes that Defendants have properly stated the legal standard for this

---

[1] Exhibit 4 to Plaintiff's Request for Judicial Notice does, however, demonstrate why it is entirely reasonable for Defendants to expect the forum selection clause will be enforced—as noted on a page from Sotheby's website, Sotheby's "reaches every point of the global art market, with 90 locations in 40 countries," and there are "approximately 250 auctions each year in ten salerooms around the world . . . ."  Plaintiff's Request for Judicial Notice in Opposition to Motion to Dismiss


REPLY ISO DEFENDANTS' MOTION TO DISMISS                                        CASE NO.: 3:13-cv-02183-RS

motion and that Brooks bears the burden on this motion. Brooks argues only that the forum selection clause is unenforceable because (1) it contravenes the public policy of California and (2) he did not have reasonable notice of it when he paid $96,000 for the painting. As set out in detail below, both of these arguments are wrong. The agreement that venue for Brooks' claims would be exclusively in the courts of England does not contravene any public policy of California, and Brooks has provided no evidence to the contrary. Brooks does not deny that he made 31 purchases from Sotheby's London's auctions in London prior to the one in question, and he has failed to demonstrate that he did not have adequate notice of the forum selection clause.

      A.      The Forum Selection Clause In Sotheby's Conditions Of Business Does Not Contravene Any Public Policy Of California

Brooks argues that the forum selection clause in the Sotheby's Conditions of Business is unenforceable because it contravenes the public policy of California. In support of this argument, Brooks relies on the provisions of the California Consumers Legal Remedies Act ("CLRA"), California common law regarding the tolling of statutes of limitation in certain circumstances, and the Ninth Circuit's *per curiam* decision in *Doe v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009). Brooks' reliance is misplaced: the *AOL* case is clearly distinguishable from the present case, Brooks has made no showing that English law does not provide the same or equivalent remedies as are available under California law, and, in any event, the instant motion does not seek a choice of law determination.

In *Doe v. AOL LLC*, AOL moved to dismiss a consumer class action lawsuit under Rule 12(b)(3) on the basis of a forum selection clause in the AOL Member Agreement. 552 F.3d at 1078. The AOL Member Agreement contained a provision that designated Virginia law, *excluding its conflict-of-law rules*, and designating the forum as the "courts of Virginia." *Id.* at 1080. The Ninth Circuit interpreted the "courts of Virginia" to mean the state courts in Virginia and to exclude jurisdiction in the federal courts situated in Virginia. *Id.* at 1082. As a result, the court found that the forum selection clause contravened California public policy because (a) it

1  required application of Virginia law excluding Virginia's conflict-of-laws rules such that the
2  Virginia court would not be able to determine whether California law might properly be applied to
3  a case filed in Virginia, and (b) consumer class actions are not available in Virginia state courts.
4  The combination of the choice of law provision with the forum selection clause resulted in a
5  violation of California public policy "by forcing [plaintiffs] to waive their rights to a class action
6  and remedies under California consumer law." *Id.* at 1084.

7  This case is clearly distinguishable here.  The Sotheby's Conditions of Business do not
8  exclude a conflict-of-laws analysis.  The "Governing Law" provision states that "[t]hese
9  Conditions of Business and all aspects of all matters, transactions or disputes to which they relate
10 or apply shall be governed by and interpreted in accordance with English law."  Declaration of
11 Claudia Lisette Aguilar ("Aguilar Decl.") ¶2 & Ex. A.  Under English law, a court in England may
12 well decide that California law should apply to some or all of Brooks' claims.  Certainly nothing
13 in the Conditions of Business would preclude Brooks from arguing that the court in England
14 should apply English conflict-of-laws rules to his claims and that California law should govern.

15 Despite bearing the burden of demonstrating unenforceability of the forum selection
16 clause, Brooks has made no showing whatsoever regarding English law and whether or not it
17 would provide the same or equivalent remedies as are available under California law. By contrast,
18 in *AOL* the plaintiffs demonstrated that consumer class actions were not available in Virginia state
19 court and that they were available under California law.  This difference is crucial to the Court's
20 adjudication of this motion. All Brooks has done is recount what remedies and law are available to
21 him here in California.  He has failed to provide any evidence regarding what equivalent remedies
22 would be available to him in England under the laws of England, or whether or not a court in
23 England might be persuaded to apply California law to one or more of his claims.[2]

---

[2] Defendants do not concede that California law would govern Brooks' claims even if they were to
be adjudicated in this Court.  The transaction at issue took place in London and was expressly
conducted under the laws of England.  There is little basis here for application of California law to
these claims under California choice-of-law jurisprudence. *See Nedlloyd Lines B.V. v. Superior
Court*, 3 Cal. 4th 459, 465 (1992) (holding that choice of law provisions are presumptively valid
(footnote continued)



Numerous District Court opinions have reached the same conclusion in enforcing forum selection clauses despite arguments that California public policy would be contravened.  In *Madanat v. First Data Corp.*, 2011 WL 208062 (N.D. Cal. Jan. 21, 2011), the court distinguished the *AOL* case and enforced a forum selection clause where the plaintiff failed to show that he would be barred from pursuing his claims in the selected venue and failed to demonstrate any differences between the remedies available in California and the selected venue.  *Id.* at *4.  Likewise, in *Mazzola v. Roomster Corp.*, 2010 WL 4916610 (C.D. Cal. Nov. 30, 2010), the court distinguished *AOL* and held that "enforcing the forum selection clause itself does not amount to a deprivation of Plaintiff's rights under [the CLRA]." *Id.* at *4 (noting that unlike in *AOL*, the plaintiff had "made no showing that New York law—assuming it did apply to her action—does not provide the same or equivalent remedies as are available under California law").

Courts have also noted that parties opposing forum selection clauses often conflate the question of the forum with the question of what law will be applied in that forum.  For example, in *Besag v. Customer Decorators, Inc.*, 2009 WL 330934 (N.D. Cal. Feb. 10, 2009), the court enforced a forum selection clause and observed that "[i]ndirect attacks [on a forum selection clause] based on what substantive law will ultimately apply to a party's claims are problematic because they require courts to speculate as to the potential outcome of the litigation on the merits in the [selected] forum and to consider whether that outcome would conflict with a strong public policy of the [original] forum at the outset of the action."  *Id.* at *14 (quotation marks omitted).  Similarly, in *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101 (S.D. Cal. 2006), the court found that the plaintiff had "cleverly, *but impermissibly*, combin[ed] the forum selection clause

---

and uniformly enforced unless (1) the chosen jurisdiction does not have a "substantial relationship to the parties or their transaction" and there is no other reasonable basis for the parties' choice of law, or (2) the chosen state's law is contrary to a fundamental public policy of California and California has a materially greater interest in the matter).  For purposes of this motion, Brooks bears the burden of proving that the choice of forum provision contravenes California public policy by showing that he has somehow given up some remedy available to him under California law.  This he has not done, so the Court need not address whether Brooks has also shown that California law should apply to these claims wherever they might be adjudicated.



and choice of law analyses when she argue[d] that enforcement of the forum selection clause [would] result[] in the application of a Washington law violative of California public policy." *Id.* at 1104 (emphasis added and citations omitted). Here, Brooks has used the same impermissible tactic by basing his argument on the unfounded premises that California law should ultimately govern his claims and, assuming *arguendo* that he is right about the choice of law issue, that a court in England would not apply California law.

The Court should follow the reasoning of the decisions cited above and hold that the forum selection clause in the Sotheby's Conditions of Business is enforceable because there is no evidence that it impermissibly contravenes any public policy of California, and it is premature to decide what law might be applied to Brooks' claims if and when he pursues them in the parties' selected forum.

### B. Brooks Had Reasonable And Sufficient Notice Of The Forum Selection Clause In Sotheby's Conditions Of Business

Brooks' only other argument in opposition to this motion to dismiss is that he did not have notice of the existence of the forum selection clause prior to purchasing the painting. Brooks does not, however, dispute the fact that the forum selection clause was in the auction catalogue or the fact that the one-page invoice he received from Sotheby's made specific reference to the existence of the Conditions of Business. Aguilar Decl. Exs. A & B. Brooks also does not dispute the fact that he made 31 purchases from Sotheby's London auctions prior to purchasing the painting at issue here and that each of these prior purchases was also made subject to Sotheby's Conditions of Business and the same forum selection clause. Aguilar Decl. ¶6. Brooks' only evidence regarding this issue is his statement that he "did not *notice* either the forum selection clause or the choice of law provision that I have since seen was on page 280 of the catalogue." Declaration of Steven Brooks in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ¶2 (emphasis added). Brooks' failure to read the clause is irrelevant to the issue of whether he had a reasonable opportunity to do so.

In the cases Brooks quotes involving cruise ship tickets, the Ninth Circuit has held that

"the 'proper test of reasonable notice is an analysis of the overall circumstances on a case-by-case basis, with an examination not only of the ticket itself, but also of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1363 (9th Cir. 1987). As Brooks also quotes in his opposition, the "surrounding circumstances to be considered include the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.* at 1364.

Here, the facts indicate that Brooks had reasonable notice of the forum selection clause. An examination of the auction catalogue itself reveals that the "CONDITIONS OF BUSINESS" appear prominently at the top of page 278 of the catalogue followed by two short, set-off paragraphs announcing the importance of these conditions and that they set out the terms of the relationship between "Sotheby's, Sellers and Bidders." Aguilar Decl. Ex. A. The typeface of the text that follows is not "fine print" and is not materially smaller than the typeface of the text describing the provenance of the painting. Each section of the Conditions of Business is called out with a bold-faced heading, and the section relevant here appears at the very top of page of 280 under the heading "**Law and Jurisdiction**." *Id.* The Conditions of Business were not hidden from Brooks nor was he required to refer to some document other than the auction catalogue to learn the contents of the Conditions of Business. Sotheby's then referenced these Conditions of Business again on the invoice sent to Brooks following his winning bid on the painting. *Id.* Ex. B. Sotheby's communicated these conditions to Brooks in the context of his purchase of a single painting for $96,000. There is no evidence that this was a snap decision by Brooks or that he did not have an ability *or sufficient incentive* to become meaningfully informed about the conditions under which he was spending $96,000 on a single painting.

This was also not Brooks' first experience purchasing something from a Sotheby's auction in London subject to these Conditions of Business. Brooks had made *31* prior purchases and had had ample opportunity and incentive to learn and understand the terms under which he was entering into these transactions. Aguilar Decl. ¶6. The invoice Brooks received from Sotheby's

reflects the price paid by Brooks in Great Britain Pounds ("GBP"), not dollars and indicates that payment may be made directly to Sotheby's bank *in London*. *Id.* Ex. B. All of these extrinsic factors are consistent with Sotheby's condition that England would be the forum for any dispute arising from its auctions.

In sum, the question here is not whether Brooks actually read the forum selection clause,[3] but rather whether he had a reasonable opportunity and incentive to do so under the circumstances. The Court should not countenance Brooks' arguments that this transaction is akin to obtaining monthly internet service or buying a cruise ship ticket. Brooks repeatedly participated in global art auctions in London pursuant to the Sotheby's Conditions of Business, and it is reasonable that he should be required to abide by those conditions now.

    C.    **Brooks' Claims Are Covered By The Mandatory Forum Selection Clause And These Claims Should Be Dismissed Pursuant To 28 U.S.C. section 1406(a)**

Defendants' opening memorandum stated (1) that all of Brooks' claims are governed by the forum selection clause; and (2) that where the proper venue under a forum selection clause is located in a foreign country, the court must dismiss the case for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. section 1406(a). Brooks' opposition does not address these issues, and Brooks has conceded that his claims are all governed by the forum selection clause and that dismissal is the proper result if the Court finds the clause enforceable.

Dated: June 10, 2013        SKAGGS FAUCETTE LLP

By:      /s/
        Jeffrey E. Faucette
Attorneys for Defendants SOTHEBY'S and SOTHEBY'S, INC.

---

[3] A fundamental tenant of contract law is that a party is bound by the terms of his contract, even if he chooses not to read them. *See, e.g., Upton v. Tribilcock,* 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.")

