IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

STEVEN BROOKS,

    Plaintiff,

v.

SOTHEBY'S, SOTHEBY'S, INC., AND DOES 1 THROUGH 10, INCLUSIVE,

    Defendants.

No. 13-cv-02183 RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Defendants Sotheby's and Sotheby's, Inc. seek dismissal of Plaintiff Steven Brooks' complaint for improper venue.[1] Brooks' claim for relief arises out of his purchase of a painting from an auction conducted by Sotheby's in London, England. Brooks' auction bid was subject to the Conditions of Business set forth in Sotheby's auction catalogue, including a forum-selection clause granting exclusive jurisdiction to the Courts of England to settle all disputes in connection

---

[1] There is some dispute between the parties about the distinction between Sotheby's, Sotheby's, Inc., and a third entity, Sotheby's London. The parties' disagreement about their interrelatedness and the extent to which that affects the reach of the forum-selection clause at issue has been considered, but these arguments are omitted as irrelevant to the disposition of this motion.

with the auction. Because the forum-selection clause did not result from fraud or overreaching and enforcement would not violate fundamental fairness or contravene public policy, the forum-selection clause is controlling, and the case is dismissed for improper venue.

## II. BACKGROUND

A. Plaintiff's Purchase of the Painting and Terms Governing Its Sale.

Plaintiff Steven Brooks purchased the painting known as "Allegorical portrait of a lady as Diana, wounded by Cupid" for approximately $96,000, by absentee bid through an auction in London, England conducted by Sotheby's, an international auction house. Def.'s Mot. Dismiss 3. This painting was Brooks' 32nd purchase from auctions at Sotheby's salesrooms in London, and he subsequently purchased four additional items from Sotheby's London auctions. *Id.* at 4. When Brooks attempted to consign the painting for sale with the auction house Christies, experts there informed him the painting once was owned by Hermann Goering, founder of the Nazi Gestapo. Compl. ¶ 8. In light of the circulation of confiscated and forcibly sold artwork from Jewish collections that occurred after 1933, Christies concluded there was insufficient evidence to determine the circumstances under which Goering acquired the painting in 1939, and thus they could not assist Brooks in its sale. *Id.* at ¶¶ 5, 8. Brooks returned to Sotheby's, informed them of Christies' findings, and requested their assistance selling the painting. *Id.* at ¶ 8. After researching the painting's ownership history, Sotheby's concluded they were unable to clarify the painting's provenance sufficiently to offer it for sale, and declined to refund Brooks' purchase price. *Id.*

Prior to the auction at issue, Sotheby's distributed a catalogue describing the artworks for sale at the auction and the Conditions of Business governing the auction. Def's Mot. Dismiss 4. The Conditions of Business state, "[t]he nature of the relationship between Sotheby's, Sellers and Bidders and the terms on which Sotheby's (as auctioneer) and Sellers contract with Bidders are set out below." Aguilar Decl. Ex. A at 278. Section 13 of the Conditions of Business, headed "Law and Jurisdiction" in bold print, states in part, "[f]or the benefit of Sotheby's, all Bidders and Sellers agree that the Courts of England are to have exclusive jurisdiction to settle all disputes arising in connection with all aspects of all matters or transactions to which these Conditions of Business relate or apply." *Id.* at 280. Following Brooks' successful bid on the painting, Sotheby's sent

Brooks an invoice reflecting his purchase, and included in the invoice a reference to the Conditions of Business from the auction catalogue. Aguilar Decl. ¶ 4, Ex. B. The painting Brooks purchased appeared on page 243 of the catalogue, and the Conditions of Business appeared on pages 278-80. Def's Mot. Dismiss 4. Brooks' earlier 31 purchases from Sotheby's London salesrooms were also conducted pursuant to the governing Conditions of Business contained in the catalogues for those auctions. Aguilar Decl. ¶ 6. Sotheby's operates 90 locations in 40 countries, holding about 250 auctions annually in ten salesrooms around the world. Def.'s Reply Br. Supp. Mot. Dismiss 3 n.1.

B. Procedural History.

Brooks filed a complaint in the Superior Court of San Francisco averring Defendants Sotheby's, Sotheby's, Inc., and Does 1 through 10, inclusive: 1) violated the California Consumers Legal Remedies Act, section 1750 of the California Civil Code, for engaging in "unfair, deceptive and unlawful practices and unconscionable commercial practices in connection with the sale of any goods or services[;]" 2) engaged in "unlawful," "unfair," and "fraudulent" business practices in violation of the Unfair Competition Law, section 17200 of the California Business and Professions Code; 3) received unjust enrichment; 4) engaged in fraudulent concealment; and 5) made negligent misrepresentations. Compl. ¶¶ 13, 19, 24-26, 28-32, 34-39.

After removing to this Court, Sotheby's and Sotheby's, Inc. moved to dismiss Brooks' complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Def's Mot. Dismiss 2. In their motion, Defendants argue the dispute arises under a contract containing an enforceable mandatory forum-selection clause granting exclusive jurisdiction to the Courts of England, and where the proper venue is in a foreign country, the Court must dismiss for lack of authority to transfer a case to a foreign court. *Id.* at 4-9. Brooks seeks denial of Defendants' motion and a finding the forum-selection clause is unenforceable, on the grounds enforcement would violate California public policy and lack of reasonable notice. Pl.'s Opp'n Def's Mot. Dismiss 4-9, 11. Defendants, however, contend Brooks has failed to show English law would provide inadequate remedies or that English courts would refuse to apply California law under English choice-of-law provisions. Def.'s Reply Br. Supp. Mot. Dismiss 5. They also argue Brooks had reasonable notice, based on the forum-selection clause's physical prominence, the invoice's

reference to the Conditions of Business and its stated requirement payment be made in British pounds to Sotheby's bank in London, Brooks' ability and incentive to become meaningfully informed about the Conditions of Business, and his prior experience purchasing items from Sotheby's auctions in London. *Id.* at 7-9.

### III. LEGAL STANDARD

A motion to dismiss based on a forum-selection clause is governed by Federal Rule of Civil Procedure 12(b)(3), which allows a case to be dismissed for improper venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). When considering a forum-selection clause under a Rule 12(b)(3) motion, the Court need not accept pleadings as true and may consider facts outside the pleadings, but the Court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137-38 (9th Cir. 2003). A district court shall dismiss or transfer a case "laying venue in the wrong division or district." *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F. Supp. 2d 855, 857 (N.D. Cal. 2010) (citing 28 U.S.C. § 1406(a)).

A forum-selection clause is presumptively enforceable unless it violates fundamental fairness or is the result of fraud or overreaching. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (finding forum-selection clauses to be binding even if the contract in question was not negotiated). Courts may find a forum-selection clause unreasonable and unenforceable if: 1) its inclusion was the result of fraud, undue influence, or overweening bargaining power; 2) the selected forum is so "gravely difficult and inconvenient" the complaining party would "for all practical purposes be deprived of [his] day in court[;]" or 3) enforcement would contravene a strong public policy of the forum in which the suit is brought. *Argueta*, 87 F.3d at 325 (quoting *Bremen*, 407 U.S. at 12-13). A plaintiff seeking to avoid dismissal due to a forum-selection clause has the burden to show venue is proper in his chosen forum. *Id.*

### IV. DISCUSSION

Brooks has not averred facts sufficient to overcome the presumption in favor of upholding the forum-selection clause at issue. He does not aver Sotheby's engaged in fraud, undue influence,

or overweening bargaining power to include the forum-selection clause in the Conditions of Business, nor that England would be a "gravely difficult or inconvenient" forum such that he would be deprived of his day in court. While Brooks argues public policy prevents enforcement of the forum-selection clause and that he lacked reasonable notice of its terms, his claims are insufficient to find the forum-selection clause invalid.

A. California Public Policy.

    a. The Consumer Legal Remedies Act.

Courts will not uphold a forum-selection clause "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15. The California Court of Appeal recognizes California public policy against waivers of consumer rights under the Consumer Legal Remedies Act (CLRA). *America Online, Inc. v. Superior Court of Alameda County (Mendoza)*, 108 Cal. Rptr. 2d 699, 710 (Cal. Ct. App. 2001). The CLRA provides, "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009) (citing Cal. Civ. Code § 1751). In *Mendoza*, the court held AOL's forum-selection clause was unenforceable in a class-action suit, reasoning transfer to Virginia state courts, accompanied by a choice-of-law provision applying Virginia law, would waive consumers' CLRA statutory remedies. *See Mendoza*, 108 Cal. Rptr. 2d at 710-11 (noting consumer class actions are not allowed in Virginia state courts). The Court of Appeals for the Ninth Circuit applied California's public policy against waivers of consumer rights under the CLRA in a similar class-action suit, declining to enforce forum-selection and choice-of-law clauses limiting venue to Virginia state courts and requiring application of Virginia law. *Doe 1 v. AOL LLC*, 552 F.3d at 1080, 1082, 1084 (holding the forum-selection clause was "unenforceable as to California resident plaintiffs bringing class action claims under California consumer law.").

Courts uphold forum-selection clauses in cases involving CLRA claims when the plaintiff does not show choice-of-law provisions limit his remedies or that the designated forum's law would not provide the same or equivalent remedies as California law. *See, e.g.*, *Mazzola v. Roomster Corp.*, 2010 WL 4916610, *3-4 (C.D. Cal. Nov. 30, 2010) (concluding in such circumstances,

"enforcing the forum selection clause itself does not amount to a deprivation of Plaintiff's rights under California law"); *Gamayo v. Match.com LLC*, 2011 WL 3739542, *6 (N.D. Cal. Aug. 24, 2011) (distinguishing *Mendoza* and *AOL* as "based on the conclusion that the plaintiffs would not be able to pursue their claims as a class action if the forum selection clause were enforced."). In *Mazzola*, the plaintiff argued *Mendoza* and California public policy required the court not to enforce a forum-selection clause for violating the CLRA's anti-waiver provision. 2010 WL 4916610 at *3-4. In transferring the case to New York, the court reasoned the absence of choice-of-law provisions in the contract left the plaintiff "free to argue for application of California law[,]" and the plaintiff "made no showing that New York law—assuming it did apply to her action—does not provide the same or equivalent remedies as are available under California law." *Id.*

Brooks has not shown enforcing the forum-selection clause at issue would effectuate a waiver of his CLRA claims in violation of California public policy. As in *Mazzola*, the governing law provisions do not preclude application of California law in the designated forum, and Brooks is free to argue California law should govern this dispute under English conflict-of-law rules. Def.'s Reply Br. Supp. Mot. Dismiss 5. Brooks also does not aver English law provides remedies different and not equivalent to those available under California law. The instant case, involving a single plaintiff, is further distinguishable from *Mendoza* and *AOL*, both class-action suits.

   b. Waiver of Trial by Jury.

The right to a jury trial in federal court is generally governed by federal law. *Simler v. Conner*, 372 U.S. 221, 222 (1963); *but see Fin. Tech. Partners L.P. v. FNX Ltd.*, 2009 WL 464762, *1-2 (N.D. Cal. Feb. 24, 2009) (applying California law to hold a jury waiver unenforceable in a contract with a California choice-of-law provision). Under federal law, the right to a jury trial may be waived by a contract knowingly and voluntarily executed. *Okura & Co. (America), Inc. v. Careau Group*, 783 F. Supp. 482, 488 (C.D. Cal. 1991) (citing *Leasing Service Corp. v. Crane*, 804 F.2d 828, 832-33 (4th Cir. 1986)).[2] To determine whether a waiver is thereby enforceable, courts

---

[2] In contrast, under California law pre-dispute waivers of the right to a jury trial are generally unenforceable. *See Grafton Partners L.P. v. Superior Court of Alameda County*, 36 Cal. 4th 944, 950, 961 (2005) (holding unenforceable the parties' express pre-dispute waiver to have their civil disputes adjudicated in a court trial rather than a jury trial). While Brooks does not raise *Financial Technology* as providing a basis for analyzing his jury trial rights under California law, it is worth distinguishing that case as involving a contract with uncontested and explicit California choice-of-

consider the following factors: "(1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." *See, e.g.*, *Century 21 Real Estate LLC v. All Professional Realty, Inc.*, 2012 WL 2682761, *3 (E.D. Cal. July 6, 2012).

Enforcing the forum-selection clause at issue would not violate Brooks' right to a jury trial under federal law. Brooks does not present any reason why federal law, which generally governs this right in federal court, should not apply here. Under the four factors articulated in *Century 21 Real Estate*, Brooks knowingly and voluntarily accepted the terms of the auction contract. While this was not a bargained for or negotiated contract, Brooks was an experienced participant and the terms contained in the auction catalogue were not inconspicuous. This was Brooks' 32nd purchase from a Sotheby's London auction, and he freely chose to bid in the auction subject to terms of which he had reasonable notice, as discussed below in greater detail.

In any event, independent of whether California or federal law governs Brooks' right to a jury trial, he has not shown enforcement of the forum-selection clause would indirectly effectuate a waiver of that right. In support of his argument, Brooks cites English law that provides in part, "[w]here, on the application of any party . . . the court is satisfied that there is in issue . . . a charge of fraud against that party . . . the action shall be tried with a jury, unless the court is of opinion that the trial requires any prolonged examination of documents or accounts or local investigation which cannot conveniently be made with a jury." Pl.'s Suppl. Opp'n Def.'s Mot. Dismiss 1-2 (citing Senior Courts Act 1981 § 69(1)). The Act further provides cases falling outside section 69(1) "shall be tried without a jury unless the court in its discretion orders it to be tried with a jury." *Id.* at 2 (citing Senior Courts Act 1981 § 69(3)). Brooks' claim for relief, including a charge of fraud, falls within the ambit of section 69(1) on its face, and English courts additionally retain discretion to order a jury trial under section 69(3). Unlike in *Grafton*, the forum-selection clause at issue does

---

law provisions. 2009 WL 464762, at *1-2. In contrast, it is not clear California law governs the contract at issue here, and the parties do not contest choice-of-law issues at this time.

not expressly waive Brooks' right to a jury trial, and the provisions of English law he cites do not suggest he would necessarily be denied that right in English courts.

        c. Other Public Policy Arguments.

Public policy arguments for upholding the forum-selection clause at issue in *Shute* apply here. As the Court reasoned in *Shute*, concerning the forum-selection clause attached to a cruise passenger's ticket, a "reasonable forum clause in a form contract" was permissible for three main reasons: 1) the cruise line "has a special interest in limiting the fora in which it potentially could be subject to suit[,]" since the nature of its business exposes it to potential litigation in different fora from plaintiffs from many locales; 2) an *ex ante* forum-selection clause dispels confusion about where suits must be brought and defended, saving litigants the time and expense of pretrial motions to determine the correct forum; and 3) passengers likely benefit from forum-selection clauses in the form of reduced fares, reflecting savings the cruise line enjoys by limiting the fora in which it may be sued. *Shute*, 499 U.S. at 593-94.

These reasons similarly apply to the instant case. First, Defendants have a special interest in limiting the fora in which they might defend suit. With operations in 40 countries and 250 annual auctions in ten global salesrooms, Sotheby's conducts a business that, by its nature, exposes it to potential litigation in different fora from plaintiffs from many locales. Second, the *ex ante* forum-selection clause at issue serves a similar purpose as the clause in *Shute*, attempting to dispel confusion about where suits must be brought and defended. Finally, there is no reason to suggest *Shute*'s third rationale would not also apply to Sotheby's, whereby auction participants would benefit from forum-selection clauses in the form of reduced costs, reflecting the savings Sotheby's enjoys by limiting the fora in which it may be sued.

B. Reasonable Notice.

The validity of a forum-selection clause in an adhesion contract depends on whether the clause was communicated reasonably to the plaintiff. *Deiro v. American Airlines Inc.*, 816 F.2d 1360, 1364 (9th Cir. 1987). This is a question of law for the Court, consisting of a two-prong test including: 1) the physical characteristics of the contract, such as size of type, conspicuousness, clarity of notice, and ease with which the plaintiff can read the relevant provisions; and 2) the

overall circumstances, including "any extrinsic factors indicating the [plaintiff's] ability to become meaningfully informed of the contractual terms at stake[,]" such as his familiarity with the contract, the time and incentive he has to study its provisions, and any other notice he received in addition to the contract. *Id.* at 1363.

Assuming Brooks was unaware of the forum-selection clause, as required at this stage of the pleadings, he nonetheless had reasonable notice as a matter of law. Under the first prong, the clause's physical characteristics present a mixed case. Its small font size and location at the end of the catalogue weigh against reasonable notice, but it was clearly labeled with the bolded heading "Law and Jurisdiction." Under the second prong, however, extrinsic factors clearly indicate Brooks had the ability to become meaningfully informed about the contractual terms at stake. He does not challenge Defendants' contention they sent him a catalogue containing the Conditions of Business prior to the auction, and he presents no issue relative to his receipt of the catalogue in advance of his auction participation. Brooks also does not contest this was his 32nd purchase from a Sotheby's auction in London, and his participation in similar transactions suggests he was familiar with the type of catalogue in dispute. He had a large incentive to study the contract provisions, since this single transaction involved the purchase of a $96,000 painting. His receipt of the invoice provided additional notice outside the catalogue, by reference to the Conditions of Business. Finally, the invoice's listing of the painting's price in British pounds and its direction to transfer funds directly to Sotheby's bank in London would have put Brooks on notice England might be the designated forum for disputes arising from his participation in the London auction.

C. Whether the Forum-Selection Clause Requires Dismissal.

Mandatory forum-selection clauses are to be "strictly enforced" unless the plaintiff can meet his burden of showing its enforcement would be unreasonable. *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 618 (N.D. Cal. 2002) (citing *Bremen*, 407 U.S. at 12). To be mandatory, a forum-selection clause "must contain language that clearly designates a forum as the exclusive one." *Id.* (quoting *Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995)). If the proper venue is in a foreign country, federal courts lack authority to transfer and

must dismiss for improper venue. *SeeComm Network Servs. Corp. v. Colt Telecomms.*, 2004 WL 1960174, *2 (N.D. Cal. Sept. 3, 2004).

The forum-selection clause at issue is mandatory rather than permissive. Its language clearly designates the Courts of England as the exclusive forum for disputes such as this, stating: "all Bidders and Sellers agree that the Courts of England are to have *exclusive* jurisdiction to settle all disputes arising in connection with all aspects of all matters or transactions to which these Conditions of Business relate or apply." Aguilar Decl. Ex. A at 280 (emphasis added). Brooks' claims for relief center on Sotheby's actions related to his auction purchase, falling within the ambit of the Conditions of Business which govern "all disputes arising in connection" with the auction. The breadth of the forum-selection clause, covering "*all* disputes arising in connection with *all* aspects of *all* matters or transactions[,]" supports this finding, and Brooks does not contest it. In order to enforce strictly the plain language of the forum-selection clause at issue, which grants the Courts of England exclusive jurisdiction over this case, the action must be dismissed for improper venue.

## V. CONCLUSION

Defendants' motion to dismiss for improper venue is granted.

IT IS SO ORDERED.

Dated: 7/1/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE